Our third case for this morning is Reynolds v. Hepp. Mr. Park. Good morning. Chief Judge Wood, Judge Hamilton, Judge Barrett, may please support. My name is Sam Park. I'm an attorney at Winston and Strachan. I am the court-appointed attorney for the petitioner, Mr. Cornell Reynolds. Mr. Reynolds could not be here today. He's at the Wisconsin Correctional Facility. Your Honors, this case, at its core, is about Mr. Reynolds' Sixth Amendment right to counsel. Nearly 55 years ago, Judge Black, Justice and Gideon v. Wainwright held that lawyers in criminal courts are necessities, not luxuries. And since then, the right to counsel, both at trial and during appeals, as established by Douglas v. California, has been celebrated as one of the most fundamental rights in the U.S. criminal justice system. The promise of Gideon, however, means more than just the existence of counsel. It means that the accused defendant is entitled to independent advocates who will work on behalf of the defendant without state interference and free from conflict of interest. So, Mr. Park, I would like you to unravel this case a little bit for me in the following way. Mr. Reynolds gets convicted. He files some trial counsel, I gather, files some post-conviction motions under these somewhat unusual Wisconsin procedures. Then there's a remand for the hearing. Then, finally, after denial of post-conviction relief, we get the state public defender saying to Williams that it's withdrawing funding and all the things, sort of interfering, if you will, with the attorney-client relationship. That's correct. But one of the arguments that your opponent raises is, wait a minute, that's pretty late in the day. We've already been through, in a sense, a round of appeals when we had, you know, the denial of the Mockner hearing and then you go to the Wisconsin Court of Appeals in 2005 and the reversal and remand. So, has Mr. Williams waived the right to complain about the effectiveness of, A, his trial counsel or, B, his appellate counsel? Your Honor, I think there's no dispute here that the first round of appeals, his direct appellate rights are what's at issue here. When he was appointed, Mr. Williams, for his appeal during the so-called second round, that was considered, under Wisconsin law, to be his substantive appeal. So that was when he was supposed to be afforded his right to counsel. And I don't think there's any argument from the state that he has waived, he could not waive. So that's the process that begins after the Mockner hearing. That is correct, Your Honor. So first we have this round about, should there be a Mockner hearing? There's a hearing and the Wisconsin trial court denies post-conviction relief, but because in Wisconsin these things go up simultaneously, the merits appeal and the effectiveness of counsel, you are saying, if I'm understanding you, that on May 23rd, 2007, when the Wisconsin trial court denies the trial attorney in effectiveness of counsel argument, at that point, going on up to appeal to the Wisconsin Court of Appeals is also his merits appeal. Is that right? I believe that's correct, Your Honor. And that's after Williams has been compromised, so he shuts off his investigation at that point. That is correct, Your Honor. So the Mockner appeal is essentially that the trial counsel was ineffective, there should be a hearing about that, and the trial court says, no, I'm not going to have a hearing. And the appellate court says, well, you should have a hearing. So after that's concluded, there is a direct appeal of his substantive rights. Let me ask you a question, and I'm going to put aside for a second whether the denial claim was waived or procedurally defaulted. Sure. But on the merits of it, Williams continued to file briefs on his behalf. So it seems to me that your claim about the denial isn't that he suffered an outright lack of counsel, but just that counsel didn't raise this one argument that he wanted him to raise, which seems to have been forfeited anyway. Well, putting aside the forfeiture issue, Your Honor, so this is, I believe, a bit of the confusion about what's been waived and what's been not. It is correct that Mr. Williams did file something in the appellate court. It's an admittedly incomplete brief, but he did file something. What's missing? The equal protection claim? That's what this is about, that he didn't? At a minimum, Your Honor. Is there anything else? Well, the jury instruction issue, there are other issues that we just don't know about. Because Mr. Reynolds here asked Mr. Williams to investigate certain issues. The record's not clear what those issues are. One avenue of relief that we do know about is the equal protection issue. But there were others that the record simply does not show about. And I think that's part of the problem here, is that he substantively checked out of this case as soon as he was essentially fired. Well, did he check out? Because he continued to pursue, even though he wasn't getting paid, the arguments that were already in play. So is it your contention? Let's even assume that there was something besides the equal protection claim that he didn't investigate. Would your position be then that a defendant suffers an outright lack of counsel if there are two or even three arguments that that counsel doesn't raise in the brief? I think, I believe, Your Honor, Judge Barrett, that's a different situation. Here, the facts are really clear. The affidavit shows from Mr. Williams that he was essentially fired. This isn't a situation where counsel reviews the issue and says, well, there's really not much merit there. He kept working. He didn't quit. He filed the brief. What he says in the affidavit is that out of professional obligation, he submitted to the court the brief. But he does no more investigation, right? I mean, as I understand it, maybe there's three boxes here. There's the absolute denial of counsel, which I think as Judge Barrett is suggesting is at best an awkward fit for this case because he continues to do things. There's the conflict of interest. You can have a lawyer, but if your lawyer has a conflict of interest with you, that lawyer is not going to be performing as the lawyer you're entitled to under Kyler against Sullivan. And then you just have a regular old Strickland Sixth Amendment ineffectiveness of appellate counsel argument. So you have all three of those arguments. There certainly is a line of cases in the Supreme Court, and what comes to my mind is Wiggins against Smith, that says part of your right to effective assistance of counsel is for counsel to conduct a reasonable investigation. So if this guy, because of a conflict of interest, shuts down his investigation and carries forward only the things he'd had time to do before he gets fired by the state public defender, maybe you have something. I don't know. I don't see this in the denial mode, but possibly Kyler, possibly Strickland, that's a different matter. And if it's Kyler, tell us about the adverse effect. Absolutely. Before I get to the conflict of interest issue under Kyler, I'd like to just briefly address the denial of counsel issue. We do believe that this is actually a denial of counsel issue. We framed it as constructive denial of counsel, but we believe this is a denial of counsel issue under Penson and also under this circuit's case, Wahlberg case. In that case, this circuit, this court held that that case, even though the trial counsel remained on the case under some judicial interference, the record in that case showed that the trial entirety of the case, there was no evidence that he, quote unquote, pulled any punches during trial. But this court still found that there was a, quote, denial of counsel case in that case because of the impermissible interference by the state. And we believe that this case is actually even worse because during the appeal, the state of Wisconsin came to Mr. Williams and said, I'm not going to pay you for any of the work that you've done for Mr. Reynolds, past or future. You're not going to get paid for any of the other cases you're working on for us, and you're never going to get another case from us. So we believe that is, in effect, a firing, a termination. And at that point, what Mr. Williams should have done was to withdraw as counsel from Mr. Williams, excuse me, Mr. Reynolds, so that Mr. Reynolds could have gotten new counsel, at least, who could have investigated these claims. Well, if it was direct appeal, he would have even had a right to new counsel. Absolutely, Your Honor. Under Douglas, he would have had a right to get counsel for those claims. And that's what should have happened. I believe Mr. Williams was trying to do the right thing by trying to, under professional obligation, to file something on behalf of Mr. Reynolds. But I believe in the end, it ultimately... But he says he stopped off further investigation. Absolutely, Your Honor. As I'd like to say, he substantively checked out of the case. Talk about the adverse effect, because he didn't investigate that one equal protection claim, and it was potentially a meritless argument. As Judge Wood said, it seems an awkward fit, the denial. But I do want to know about adverse effect, if this was a conflict of interest. Absolutely, Your Honor. So under the conflict... So the same facts give rise to what we would like to call a conflict of interest claim here. The Wisconsin court and the district court did not address the actual conflict part. And I think part of the reason is that it's pretty clear that there was this conflict. He could not serve his interest of getting paid and making his livelihood, and also advocating vigorously on behalf of Mr. Reynolds in this case, because he couldn't do both of those. And that's sort of a textbook example of what an actual conflict is. The adverse effect, this is a prong that's different than actual prejudice. The adverse effect prong under Kyler only looks at, would the attorney have done something differently? An example of this is, for example, would the attorney have filed a motion, for example, if he did not have a conflict? Okay, but in this case, is the adverse effect that he did not pursue the equal protection claim? Well, that and other issues. But we have to be able to identify an adverse effect, right?  That's another example, Your Honor. The difference between threat and actual seems to be a difference. Absolutely, Your Honor. And that's another example of the type of issue that he could have raised on appeal that he did not. But you could also get at that from ineffectiveness of appellate counsel, and maybe is that a better fit? Well, I think the conflict is a better fit. Well, first of all, legally, it's a better fit for us because there's a presumption of prejudice when you do show that there's a conflict and there's an adverse effect. Adverse effect being not a substantive inquiry, it's just would an attorney have done something differently? And that makes total sense here, Your Honor, because conflict of interest is a big deal in legal representation. In my private practice, we turn down clients all the time for even appearance of conflict. Here, there was a clear conflict and there was an identifiable effect because he even tells Mr. Reynolds, I would do these things, but I'm not going to get paid for it, so I can't do that for you. What if the public defender had operated on a flat fee kind of basis and he had worked way more than he anticipated, and so he didn't really have much incentive to work more? Would that be a conflict? That is a great question, and that's something that I've struggled with here because I think what should have happened here is the state public defender's office should have met with Mr. Williams at the beginning of the case. Here's the complexity of the appeal. Here's your budget. Go at it. Represent your client vigorously. If you spend more time on this case than perhaps we're paying you for, you might make up for it in other cases. Or maybe you just say if you spend more time, it's on you. It's your pro bono contribution. Exactly, Your Honor. Then you wouldn't find any conflict there. I don't believe that there's a conflict issue if that's what happened under that scenario, but this is a much stronger case for conflict than in the hypothetical. What if the public defender just doesn't pay very well, and so you just don't have a lot of incentive to work very hard? Arguably, Williams worked too hard here, and that's why. I don't believe that's a conflict situation because, first of all, I do believe that appointed counsel in Wisconsin are not paid well relatively to other attorneys. I think the fees are like $40 an hour for appointed lawyers, but that's a conscious choice. Those who choose to take on that type of work know exactly what they're getting into and decide to do work for that fee. What happened here is completely different. In the middle of the case, he just said you're fired. But we have to think about how we're defining conflict, right? If you take a case for $40 an hour, and then suddenly you have offers from higher paying clients, you have every incentive to start billing your time, spending time on the other cases. Is that a conflict? Your Honor, let me think about that, and maybe I'll get back to you during rebuttal, which I'm sorry, I'd like to ask you a couple of questions about the jury instruction issue. I don't know whether that's properly before us, but if those hurdles are overcome, my concern is that I really don't understand what difference. I understand the theoretical difference, but given the facts in this case, I had thought the issue at trial was identity of the shooter, not the particular way that the gun was handled. The issue there is that the charging documents said he used a weapon which resulted in that. The jury instructions were that there was a threat of use. Yes, I understand. Your Honor. But given the facts, what difference would that have made in the trial? Well, I believe the analysis would have been that the state failed to prove that because the gun was never found, that there was no actual use of the weapon, so that element could not have been proven by the jury. But somebody did die. That's correct, Your Honor, but Mr. Reynolds intends that it was not him. Right, and that's my point, that it was identity that was the issue, not the particular way  Your Honor, Judge Hamilton, I think I'm going to have to think about that issue a little bit, but I do believe that that is an issue that needs to actually be fleshed out during the actual appeal. It just never happened in this case. Thank you. All right, thank you. Mr. Roseneau. Good morning, and may it please the Court. My name is Scott Roseneau, and I represent the respondent, the early respondent, Randall Heff, the warden. I'd like to begin by talking a little bit about the appellate procedures in Wisconsin because, as Chief Judge Wood pointed out, they are a little bit unusual. So the direct appeal process from a criminal conviction generally begins with a post-conviction motion to the trial court. And that's the motion that was denied on January 5, 2004. The one that was denied? The trial court denies the post-conviction motions, including the request for the Mockner hearing, on that date. Yes, is there a question about that motion? No, I'm just following along with your account. So there was initially a motion shortly after trial, I believe 2002 is when it was filed, and Attorney Williams was on that motion, and the trial court denied it without a hearing. Then it went up on appeal. The Court of Appeals reversed and remanded for a Mockner hearing. That's 9-20-2005. The Court of Appeals does that. Correct. Attorney Williams was on that case too. And then it got remanded for a Mockner hearing. Attorney Williams worked on a Mockner hearing, and then he lost there again and then went to the Court of Appeals a second time. But in between that and the ruling of the Court of Appeals is when he's, like, banished from the Wisconsin judicial system. It's not just you're spending too much money on this case. That's why all these hypotheticals about case budgets don't seem to me to capture the fullness of what happens. You're off this case because you're wasteful and spending too much money. We're not paying you for any other case. And, by the way, we're never appointing you again. So go move to, you know, Idaho or something like that. Right. It was during the briefing when Attorney Williams was writing the briefs, the first brief, in the second appeal. That's when the SPD Congress did it. The appeal from the 5-23-2007 denial of relief on trial attorney ineffectiveness post-Mockner. That's what the Mockner hearing explores. Right. There were three claims of ineffective trial counsel. They did not involve the jury instruction issue. That was raised pro se in Reynolds' third attempt at post-conviction relief. But I would like to briefly say that I don't agree that the public defender's office told Attorney Williams he was off the case. Had they just removed him from the case or had he just stopped working or withdrawn without getting new counsel for Reynolds, then it would clearly be a denial of counsel on appeal. But that didn't happen. What they told him, though, was we're not going to pay you as much as an extra nickel for this case, and we're not going to pay you for anything else, and we're never going to appoint you again. So he just draws a line in the sand, throws into the hopper the brief on the things he's done so far, and doesn't do any more work, which, again, with the Wiggins idea in mind, bothers me very much because the Supreme Court of the United States has recognized that a dimension of effective assistance of counsel is the quality of the investigation you undertake. So I think it's an unusual scenario. But, say, in the federal court under the Criminal Justice Act, there's a budget. It's roughly $10,000. It's inched up a little bit from that. People work for that $10,000. If they expend more time, then they can ask the district court for greater compensation. The district court may say yes. The district court may say no. And that's even not enough because I know personally it has to come to me. And then I have to decide whether the person went over the $10,000 budget. Maybe they spent $14,000. Are they going to get that extra four? So that system, I don't see any reason to challenge that system, but I don't see that as what happened here. I don't think that there was a conflict of interest or a denial of counsel in this case. Attorney Williams? There was clearly a conflict of interest at this point. I understand your point about denial of counsel, but on the conflict of interest, I think it would be most helpful if you could address the questions about either prejudice or adverse effect. The Wisconsin Court of Appeals analysis in its fourth and final decision in Reynolds' case correctly concluded that there was no adverse effect because the issue, the equal protection issue that Reynolds wanted Attorney Williams to raise had already been forfeited. So essentially if there was an adverse effect, or excuse me, if there was a conflict of interest, it didn't adversely affect Attorney Williams' performance because at most it caused him to forego a forfeited issue, the equal protection issue. And Attorney Park noted that in his oral argument today that the conflict, he didn't say this in his briefs, but he said today that the conflict also caused Attorney Williams to forego the jury instruction issue. But there's the same problem with that issue, too. That issue was also forfeited, just like the equal protection issue, when it wasn't raised in the first appeal. But we've never had any adversary testing of that. It certainly, I mean, in a sense you're saying that we just have to take the state's word for it, that you would have won a forfeiture argument when, let's say, the jury instruction issue wasn't raised on the Mockner appeal. But maybe a lawyer would have a different thing to say about that if we had the other half of the adversary system operating. Well, it's not just taking my word for it. The Court of Appeals did address the jury instruction issue. And it's not a jury instruction issue. It's whether the trial counsel and appellate counsel were ineffective for not challenging the jury instructions at trial and in the first round of appeals. Right, and particularly my bigger interest is in appellate counsel since it seems we have the Mockner hearing on trial. But the appellate counsel may well have been ineffective in choosing the issues that were chosen, not going with a potentially stronger issue. I'm sure you're familiar with all of that from Strickland. Let me ask you exactly what he did do. I mean, was the brief, I'm not sure I'm clear on the record on this point, when he said he was not going to chase down the equal protection issue, had he continued to write on the brief? Am I right? Or was the brief already written so basically all he had left to do was just file it? The only evidence in the record is the affidavit by Attorney Williams, which is a little over a full page, and it's not quite 100% clear, but it goes maybe 90% of the way to saying that the SPD contacted him before he finished writing the first brief in the second appeal. So he, as the appellant, he wrote a principle brief, the state did a response brief, and Attorney Williams did a reply brief. Is this prior to or after he was told he was going to be paid? I believe my interpretation of the affidavit is after he was told he wouldn't get paid, and to clarify, his affidavit says he wouldn't get paid for the final set of briefs. He never said he wouldn't get paid for the first three things he did in the first two motions in the first appeal. Right. So once he's told by the SPD that he won't get paid for the final set of briefs, he completes and files a principle brief, a subsequent reply brief, both in the court of appeals, as well as a petition for review in the Wisconsin Supreme Court. And in all those briefs and that petition for review, he raised the only issues that had been preserved in the first appeal. Is there anything in this record about the state public defender's office's handling in this kind of a situation? I would think if you're delivering the message that was delivered to Mr. Williams, you've got to be saying, well, what do we do about your cases that are in the pipeline now? Is there anything in this record about that? There's nothing in the record. Unfortunately, this issue was raised in what's called a night petition, which is a habeas corpus petition to the court of appeals in Wisconsin. So it was never in the trial court. The trial court never looked at this issue. There's no fact-finding, no hearings or anything. So the only evidence in the record is the attachments that Reynolds, pro se, attached to his night petition, which includes the somewhat self-serving explanation in Attorney Williams' affidavit. So looking at the affidavit, it's page 64 and 65 of the appendix, and he says, in essence, been fired by public defender, deprived of payment for work already completed on his behalf, and here's the thing, and that I could not bear the expense of running down any new paths of inquiry. And then he says in paragraph 11, I completed the briefing and petition on his request, forwarded his file to him. So the best interpretation I can give of that is that he shuts down any new paths of inquiry, maybe prints off the brief that he's prepared so far and gets that into the hopper, figures maybe that's better than nothing, I don't know. But that's what he has to say about it. There's never any further exploration. Correct. He did not explore any new issues besides the ones that had been raised in the first appeal. Right. And why is that not? And the reason he didn't is because of money. The reason he didn't is because his financial interests were something that he put ahead of Mr. Reynolds' interests. That's in essence the Kyler problem that I see. He would have checked into Mr. Reynolds' other ideas had he had some prospect of compensation, but he didn't because his money was more important than Mr. Reynolds' appeal. I suppose I've got a few things to say in response to that. So the first would be there's no clearly established federal law, and Mickens v. Taylor says Kyler v. Sullivan did not clearly establish that a lawyer's financial interests could create an unconstitutional conflict of interest. But that's at high too. See, you're committing the mistake that defendants often commit. You're taking that at too high a level of generality. Here in the granular situation, it's not just, you know, I only get paid $40 an hour or you gave me a litigation budget that turned out to be too low. This is an extreme action by the state, actually a shocking action to me by the state public defender given the way it works on pending cases. You know, if the state public defender doesn't want him on the list anymore, that's fine for the future, but pending cases are another matter. Well, with all due respect, I think Reynolds' position is the one that's looking at this Supreme Court precedent at too high of a level of generality. He's saying all he needs is some precedent that says a conflict of interest is unconstitutional. No, but I don't read it that way at all. He's saying this conflict of interest, this, you know, you have to just drop my case like a hot potato conflict. That's not Mickens, that's, you know, it's on the facts is how we have to evaluate this and saying it's become too expensive. You know, even a pro bono lawyer, if the person just said, well, I'm tired of giving you pro bono hours, I'm walking out the door, you know, we would find that a very troublesome move. Well, the lawyer in this case did not just walk out the door. He still did what he was supposed to do. No, he didn't because one of the things he's supposed to do is perform a fair investigation. If he had rejected the other arguments, the equal protection argument, the jury instruction argument on the merits because he thought it was forfeited, because he thought it was not a sound argument, we wouldn't be here. I mean, that's what lawyers are supposed to do. But he doesn't. He just says, I don't want to waste my time on you because it's against my financial interest. That brings me to another point I wanted to make. And I quoted a recent Seventh Circuit case, my brief, that said a criminal defendant with a bad lawyer should not be better off than a defendant with a good lawyer. And the point of that paragraph or two of my brief is, Attorney Williams, had he given this any thought, should have said, I'm not going to raise this equal protection issue because it was forfeited when we didn't raise it in the first appeal. But he didn't think about it. That's the problem. Well, my point is, he should have. And Reynolds should not get the benefit of the doubt simply because his lawyer failed to realize that this issue was forfeited. I don't think that's how it works, though. Then we would just dispense with lawyers altogether. We would just say, we'll figure out what your lawyer could have, should have raised. We'll decide whether it was any good. That's just not the law. Let me ask you about your position on adverse effect. Does adverse effect require an inquiry? Simply, would a lawyer in his position have been affected by this conflict? Or is it more specific, something more akin to Strickland prejudice, even though you don't have to show the outcome would have been different. But asking about a particular issue, would he have behaved differently with respect to this equal protection issue? Which is it? Because it seems to me that that's pretty important. The second one, and it's not just any old effect. I noted that there's kind of a conflict in Seventh Circuit law in my brief. Even within the same case, many times, this court has said a couple different formulations for the test. And it's not just whether there was any effect or a reasonable likelihood of an effect. It's whether there was an adverse effect. And there was an effect in this case, but it wasn't adverse because the issue was forfeited. Could it be adverse, as Judge Wood's pointing out? Is it an adverse effect that he simply said, I'm not going to do any more work? Is that the adverse effect we consider? Or is the adverse effect a merits issue that was in the case, like the equal protection claim? I think it has to be the specific argument that the defendant is making. And the only argument in his brief is there was an adverse effect when the lawyer omitted this equal protection claim. And at oral argument, Attorney Park also said he omitted this jury instruction claim, but that was also forfeited for the same reason. And ultimately was also rejected on the merits in Reynolds' third appeal. I suppose I have three seconds left, so I'll just wrap it up very quickly. I ask that the decision of the district court be affirmed. Thank you. All right. Thank you very much. You were very short on time, Mr. Park, but I'll give you a minute to. Thank you, Your Honor. Just three quick points, Your Honor. First is that under the habeas statute, affidavits are absolute evidence that this court can consider. It was submitted during the state habeas petition, never challenged by the state. The state could have tested that affidavit, chose not to. It is part of the record, and this court should consider it. Number two is that adverse effect. This court in Stoya v. United States held that decisions to forego investigation or additional research are enough to satisfy the adverse effect prong of the Kyler test, and that's Stoya v. United States. Third point is that the state argues that there was forfeiture of certain claims. As Your Honor has pointed out, that needs to be tested. That was never briefed, never argued, never tested in the courts, and that's what needs to happen here. Thank you, Your Honor. All right. Thank you very much, and we appreciate very much your accepting this appointment from the court. We appreciate your efforts and those of your firm, and thanks as well, of course, to the state. We will take this case under advisement.